UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CASIMIRO S.,** | Civil Action No. 20-7414 (SDW) |
| Petitioner, | |
| v. | **OPINION** |
| **THOMAS DECKER, et al.,** | |
| Respondents. | |

Presently before the Court is the petition for a writ of habeas corpus of Petitioner Casimiro S. (ECF No. 1). Following an order to answer, the Government filed a response to the petition (ECF Nos. 5-6), to which Petitioner has replied. (ECF No. 7). For the following reasons, Petitioner's habeas petition is denied without prejudice.

**I. BACKGROUND**

Petitioner is a native and citizen of Mexico who entered the United States illegally in or about April 2007. (Document 9 attached to ECF No. 5 at 2-4). On June 27, 2014, he was served with a notice to appear and placed in removal proceedings based on his illegal entry into the United States. (*Id.*). That same day, Petitioner was released from immigration detention on bond. (Document 7 attached to ECF No. 5 at 5). While released on bond, Petitioner pled guilty to and was convicted of second-degree criminal trespass and the forcible touching of the intimate parts of another in New York on or about May 15, 2019. (Document 10 attached to ECF No. 5). He received a sentence of 364 days on the forcible touching charge, and eleven months on the trespass, but was released the same day based on time served prior to his sentencing. (Document 4 attached to ECF No. 1 at 6). Based on these convictions, Petitioner was taken back into immigration

1

custody on August 6, 2019, pursuant to 8 U.S.C. § 1226(c).  (*Id.* at 3, 6).  Petitioner has remained detained in the Hudson County Correctional Center since that time.  On November 20, 2019, an immigration judge ordered Petitioner removed and denied his applications for relief from removal.  (Document 9 attached to ECF No. 5).  Petitioner appealed, and on May 22, 2020, the Board of Immigration Appeals affirmed his order of removal and dismissed his appeal.  (Document 11 attached to ECF No. 5).  Petitioner thereafter filed a petition for review and a motion seeking a stay with the Second Circuit Court of Appeals, both of which remain pending at this time.  (Document 4 attached to ECF No. 1 at 4).  At this time, Petitioner has not been granted a stay of removal, but is subject to the forbearance agreement between the Government and the Second Circuit which prevents his removal until the Court of Appeals decides his petition and stay motion.  (*Id.*).

In his habeas petition, Petitioner contends that he is at heightened risk of severe illness should he contract COVID-19 because he has a history of mental illness, including diagnoses for Major Depressive Disorder ("MDD") and Posttraumatic Stress Disorder ("PTSD").  (*See, e.g.,* Document 3 attached to ECF No. 1 at 9).  In support of this assertion, Petitioner has provided a certification from Dr. Allen Keller, who has not previously treated Petitioner, but did conduct a telephonic "clinical interview" of Petitioner in May 2020 and has reviewed his medical records.  (*Id.* at 1).  In his certification, Dr. Keller opines that Petitioner's placement in a single occupancy cell for significant portions of the day as part of Hudson County's COVID-19 response is exacerbating these conditions as he only has contact with others for four hours a day, and that Petitioner's PTSD and MDD  "may" be weakening Petitioner's immune system, and may in turn place him at "significantly higher risk of being infected with COVID-19" and place him "at greater risk of severe COVID related complications and death."  (*Id.* at 19).

In response to Dr. Keller's certification, the Government has provided the Court with a psychiatric assessment of Petitioner prepared by his "pro bono evaluator" Dr. Arkaprava Deb, a clinical psychiatrist, in his underlying removal proceedings. (Document 2 attached to ECF No. 6). In that certification, Dr. Deb opined that Petitioner's PTSD and MDD, rather than being exacerbated by a lack of contact with others, was instead worsened when Petitioner is in crowds or large groups which remind him of a prior period of incarceration. (*Id.* at 4).

The Government has also provided the Court with Petitioner's institutional medical records. According to those records, Petitioner was given an intake screening at Hudson County on August 7, 2019. (Document 1 attached to ECF No. 6 at 7). During this initial screening, Petitioner reported that he was being treated by a mental health professional at the time of his arrest, but denied that he was taking any medications or was in need of further psychiatric treatment. (*Id.* at 9-17). Petitioner was also given a chest X-ray as part of standard TB testing, which was negative for any sign of disease or distress. (*Id.* at 19). Based on his report of having been in psychiatric treatment, Petitioner was referred for a mental health examination, but on August 9, 2019, Petitioner refused any mental health treatment and signed a treatment refusal form. (*Id.* at 23, 25-26). Petitioner's records are devoid of any instance in which he sought or requested mental health treatment following this refusal. On August 11 and 13, 2019, Petitioner reported having a fever and cold symptoms including congestion, sore throat, and cough. (*Id.* at 27-29). Petitioner was seen by a nurse on August 13, at which time he had no fever or sign of respiratory distress. (*Id.* at 29). Petitioner was provided with allergy medication, cough medication, and ibuprofen for pain. (*Id.* at 31). Petitioner thereafter received a dental evaluation on August 15, 2019, indicating that no treatment was then needed. (*Id.* at 36).

On November 7, 2019, Petitioner sought treatment for a head and chest cold as well as dandruff, for which he was provided dandruff shampoo, nasal spray, cough medicine, Tylenol, and allergy medication. (*Id.* at 79). The following day, Petitioner reported that the medication was working.[1] (*Id.* at 75). Petitioner returned to medical on January 21, 2020, reporting congestion, a sore throat, difficulty swallowing, cough, and muscle aches. (*Id.* at 77). He was diagnosed with strep throat, and was provided with antibiotics, cough medicine, and ibuprofen. (*Id.* at 77-78). Petitioner next sought treatment in the form of another dental checkup on February 6, 2020, at which time he was found to have minor dental issues resulting from tooth crowding. (*Id.* at 50). On March 8, 2020, Petitioner was seen for diarrhea and dizziness, for which he was provided meclizine and Imodium. (*Id.* at 74). On April 3, 2020, Petitioner was seen for a vitals check, at which time he had no complaints or symptoms of illness. (*Id.* at 72). On June 5, 2020, Petitioner was given a COVID-19 antibody test, which was negative. (*Id.* at 53).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction,

---

[1] Notwithstanding this report, it appears that Petitioner either failed to show or refused some of this medication on several occasions. (*Id.* at 61).

4

and asserts that his continued detention violates due process, this Court has jurisdiction over his claims.  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B.  Analysis**

In his habeas petition, Petitioner first argues that his current period of detention has become prolonged and therefore unconstitutional, arguing that he should be deemed to still be detained under 8 U.S.C. § 1226(c) despite his administratively final order of removal because he is subject to the Second Circuit's forbearance agreement.  As this Court has explained on many occasions, however, the forbearance agreement is not a judicially ordered stay sufficient to revert an alien from final order to pre-final order detention.  *See Jean A. v. Dep't of Homeland Sec.*, No. 19-13951, 2019 WL 6318305, at * (D.N.J. Nov. 26, 2019); *see also Telson O. v. Nielsen*, No. 19-3351, 2019 WL 4601525, at *3 (D.N.J. Sept. 23, 2019); *Boyd v. Taylor*, No. 17-3284, 2017 WL 4316098, at *2-3 (D.N.J. Sept. 28, 2017); *Jones v. Aviles*, No. 15-4819, 2016 WL 3965196, at *3 (D.N.J. July 21, 2016); *Severin v. Aviles*, No. 15-3711, 2016 WL 1450550, at *2 (D.N.J. Apr. 12, 2016); *Rones v. Aviles*, No. 15-3798, 2016 WL 158521, at *5 (D.N.J. Jan. 13, 2016); *Brodyak v. Davies*, No. 14-4351, 2015 WL 1197535, at *2 (D.N.J. March 16, 2015).  As Petitioner has not been granted a stay of removal, and as he is otherwise subject to an administratively final order of removal as the BIA dismissed his appeal, he is detained pursuant to 8 U.S.C. § 1231(a).  *Jean A.* 2019 WL 6318305 at *2-3; *see also* 8 U.S.C. § 1231(a)(1)(B)(ii); *Leslie v. Attorney General of the United States*, 678 F.3d 265, 268-70 (3d Cir. 2012).  Petitioner's claim of overlong detention must therefore be evaluated under the rubric applicable to post-final order of removal detention under § 1231(a).

Because Petitioner is detained under § 1231(a), the propriety of his current period of detention is controlled by the Supreme Court's decision in *Zadvydas* and the Third Circuit's decision in *Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F3.d 208, 225-26 (3d Cir. 2018).   As the Supreme Court has explained,

> Under [§ 1231(a)], when an alien is ordered removed, the Attorney General is directed to complete removal within a period of 90 days, 8 U.S.C. § 1231(a)(1)(A), and the alien must be detained during that period, § 1231(a)(2).  After that time elapses, however, § 1231(a)(6) provides only that aliens "*may* be detained" while efforts to complete removal continue.  (Emphasis added).
>
> In *Zadvydas*, the Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond "a period reasonably necessary to secure removal," [533 U.S. at 699,] and it further held that six months is a presumptively reasonable period, *id.* [at 701.]  After that, the Court concluded, if the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must either rebut that showing or release the alien. *Ibid.*

*Jennings v. Rodriguez*, --- U.S. ---, 138 S. Ct. 830, 843 (2018).

Pursuant to *Zadvydas*, any challenge to § 1231(a) detention by an alien who has been detained pursuant to § 1231(a) for less than six months must be dismissed as prematurely filed. *Id.*; *Zadvydas*, 533 U.S. at 701.  Although the Third Circuit has provided an alternative avenue for relief in the form of a bond hearing for those alien's whose detention under § 1231(a) has become prolonged, the Third Circuit, too, has recognized that such challenges may not be brought until the alien has been held under § 1231(a) for at least six months.  *See Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F3.d 208, 225-26 (3d Cir. 2018).  *Zadvydas* and *Guerrero-Sanchez* thus make it abundantly clear that an alien detained pursuant to § 1231(a) *must* be detained during the statutory ninety-day removal period and that he may not thereafter challenge his detention under § 1231(a) until he has been detained under the statute for at least six months.  As Petitioner has only been

6

detained under § 1231(a) since May 22, 2020, he is still well within the presumptively reasonable six-month period established in *Zadvydas*, and his detention remains a constitutional application of § 1231(a). Petitioner's challenge to the length of his detention is therefore premature and provides no basis for habeas relief.

Petitioner also argues in his petition that he should be released from immigration detention because he believes that he has been subjected to punitive conditions of confinement and has received insufficient medical care in light of his psychological issues and the general threat posed by the COVID-19 epidemic. In its recent decision in *Hope v. Warden York County Prison*, --- F.3d ---, 2020 WL 5001785 (3d Cir. 2020), the Third Circuit addressed the standard to be applied by district courts in evaluating such claims. As the Third Circuit explained, such claims may be raised through either of two "separate but related theories: (1) because of their age and healthcare needs, the conditions at [the facilities in which they are detained] subject them to punishment; and (2) the Government was deliberately indifferent to their serious medical needs." *Id.* at *8.

In evaluating whether the conditions in a given facility amount to undue punishment, the Third Circuit reiterated that "[t]he touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish." *Id.* at *9. In the absence of a showing that the detention officials acted with an express intent to punish the petitioner, determining whether conditions amount to unconstitutional punishment requires that the district court "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." *Id.* In reviewing the conditions and actions of detention officials and their relation to the Government's entirely legitimate interest in detaining aliens pending the conclusion of removal proceedings, reviewing courts "must acknowledge that

practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id.* at *9-10. Given the Government's strong interest in detaining aliens pending the conclusion of removal proceedings and the deference due to the expertise of detention officials, the Third Circuit in *Hope* rejected the idea that detention during the COVID-19 pandemic would amount to unconstitutional punishment where the Government had taken concrete steps aimed at mitigating the threat posed by the virus to immigration detainees, notwithstanding preexisting health conditions which may predispose given detainees to serious complications should they contract the virus. *Id.* at *9-11.

Turning to the petitioners' claims of deliberate indifference in *Hope*, the Third Circuit reaffirmed that "[t]o establish deliberate indifference, [the petitioner] must show the Government knew of *and disregarded* an excessive risk to their health and safety." *Id.* at *12 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000). The Court of Appeals further held that "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and that, in evaluating this context, a reviewing court must defer to the expertise of both medical officials and jail administrators and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as "rules of due process are not subject to mechanical application in *unfamiliar territory*." *Id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where the Government has made substantial efforts to ameliorate the effects of COVID-19 on a detention facility, a detainee will fall "well short of establishing that the Government was deliberately indifferent toward [his] medical needs" even

8

though the Government cannot entirely "eliminate all risk" of contracting COVID-19. *Id.* at *12-13.

Having reviewed the record of this matter, it is clear that the conditions to which Petitioner is subject are neither arbitrary nor excessive in relation to the Government's strong interest in detaining aliens subject to final orders of removal. Since late March, the Hudson County facility has taken numerous concrete steps to alleviate the threat of COVID-19, going far beyond the protective measures deemed sufficient by the Third Circuit in *Hope*. Specifically, the Court notes that the facility has limited its detainee population, moved most detainees, including Petitioner, into single occupancy cells to ensure ample room for social distancing, increased the sanitization and cleaning of the facility, instituted intake screenings including temperature checks of incoming detainees and staff, suspended or limited entrance into the facility by volunteers and outside vendors, provided staff with protective equipment for daily use, increased health monitoring of all detainees, increased the supply of soap and disinfecting wipes as well as providing unlimited access to water for all detainees, created quarantine and cohort units for those who have COVID symptoms or have been exposed to those who have contracted the virus, and instituted a liberal testing policy for COVID-19 infection. (Document 6 attached to ECF No. 5 at 1-8). The facility has also instituted protocols for treating COVID-19 infection including the quarantining and treatment of those who are symptomatic pending the outcome of their testing, the cohorting of those who have been exposed but are asymptomatic for fourteen days following their exposure to the virus, and special protections for those with severe underlying conditions. (*Id.* at 8-12). In light of these substantial steps taken by the facility, and the deference due to jail staff in adapting to the evolving COVID-19 pandemic, it is clear that Petitioner's conditions of confinement are

rationally related to the Government's interest in detaining him, and that his punitive conditions of confinement claim must fail.[2]

Petitioner's deliberate indifference to medical needs claim fares no better as a basis for habeas relief. Petitioner's medical records clearly indicate that he was provided treatment and medication each time he complained of health issues, and that he was even referred for a mental health evaluation that he decided to decline. His records are further devoid of any evidence that he ever raised his alleged mental health deterioration to staff for treatment, let alone that they ignored any such request. Coupled with the concrete steps taken by the jail to mitigate the threat of COVID-19, Petitioner's treatment by medical staff and his specific decision to forego even a cursory mental health evaluation are fatal to his claim that jail staff knew of and disregarded any serious threat to Petitioner's physical or mental health. Petitioner's COVID-19 claim thus must fail regardless of whether considered as a punitive conditions of confinement claim or a deliberate indifference to medical needs claim, and Petitioner is not entitled to habeas relief. *Hope*, 2020 WL 5001785 at *8-13.

---

[2] In addition to his more general punitive conditions of confinement claim, Petitioner also seeks to raise a claim directed at his placement in a single occupancy cell in which he claims that this placement equates to unconstitutional solitary confinement. Even so repackaged, his conditions of confinement claim must fail – the placement in a single occupancy cell for twenty hours a day is a specific response by staff to COVID-19 and has been undertaken specifically to protect him from the virus through increased social distancing. Given the deference due to jail officials under *Hope*, this Court finds that the use of single occupancy cells is rationally related to pandemic conditions. Indeed, Petitioner's solitary confinement allegations are an improper attempt to have his cake and eat it too – Petitioner cannot legitimately and simultaneously complain both that the facility is not doing enough to protect him from COVID-19 exposure and that the steps taken to so protect him in turn amount to punishment. In any event, Petitioner's medical records are devoid of any instance in which he has raised the issue of his mental health in relation to his placement in a single occupancy cell to jail staff, which further prevents him from being able to show any punitive purpose or implication from his placement in that environment, as does the fact that Petitioner is permitted out of his cell and into areas containing other detainees for several hours a day.

**III. CONCLUSION**

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is DENIED WITHOUT PREJUDICE.  An appropriate order follows.



Dated: September 17, 2020                              *s/Susan D. Wigenton*
                                                      Hon. Susan D. Wigenton,
                                                      United States District Judge